915 So.2d 434 (2005)
Lee Carlton WILLIAMS and Margaret Williams, Plaintiffs-Appellees
v.
Dr. Jose Romero ENRIQUEZ and The Medical Protective Company, Defendants-Appellants.
No. 40,305-CA.
Court of Appeal of Louisiana, Second Circuit.
November 17, 2005.
*435 Crawford & Anzelmo by Donald J. Anzelmo, for Appellants Dr. Jose Romero Enriquez and Louisiana Patients' Compensation Fund Oversight Board.
Nelson & Hammons by John L. Hammons, Cornell R. Flournoy, Felix J. Bruyninckx, III, for Appellees Lee Carlton Williams and Margaret Williams.
*436 Before WILLIAMS, CARAWAY and LOLLEY, JJ.
CARAWAY, J.
In this case, appellant, the Patients' Compensation Fund ("PCF"), assigned as error a discrepancy between the amount of the damage awards assessed against the PCF in the trial court's written reasons for judgment and the amount of the final judgment ultimately rendered against it. Our review of this matter causes us to conclude that the final judgment, which awarded separate damages to the injured plaintiff and his spouse in the form of a single unexplained amount, is an indeterminate judgment. Accordingly, we set aside the erroneous judgment and remand the matter to the trial court.

Facts
At approximately 5:30 p.m. on May 17, 1991, Lee Williams sustained a high pressure hand injection injury. A hydraulic hose on a piece of farm equipment he was repairing burst under 2200 pounds of pressure, injecting hot oil into his hand. Williams and his wife, Margaret, reported to the Richland Parish Hospital emergency room a little more than an hour after the accident. There they saw Dr. Jose Romero Enriquez who washed the wound with saline and sutured in a drain for the purpose of draining the hydraulic fluid. Thereafter, Dr. Enriquez released Williams and instructed him to return to the emergency room in the morning for a dressing change.
This malpractice action rests on Dr. Enriquez's failure to advise Williams of the immediate need for surgical intervention for his wounded hand. Dr. Enriquez testified during the initial trial on the issue of liability that Williams refused his recommendations for an immediate surgical evaluation and that his treatment for implanting the drain was the best he could fashion under the circumstances. Nevertheless, this testimony was rejected by the trial court in view of Mr. and Mrs. Williams' testimony to the contrary and the lack of medical records documenting the severity of the injury and Williams' refusal to follow any recommendation for surgery.
Although Williams experienced tremendous pain during the night of the accident, he did not return to the emergency room until the following morning as directed by Dr. Enriquez. Upon Williams' arrival, Dr. Enriquez consulted by phone with a physician from St. Francis Medical Center in Monroe, LA. Williams arrived at St. Francis at approximately 11:30 a.m. on May 18, 1991, where he saw Dr. Douglas Liles, an orthopedic surgeon. Dr. Liles immediately performed emergency surgery for the debridement of the wound on the injured hand.
Williams remained in St. Francis until his release on July 3, 1991 during which time he underwent approximately fourteen surgical procedures including surgery for the amputation of his right index and middle fingers. The hand also required reconstructive and plastic surgery and a skin graft which involved the sewing of Williams' hand to his abdominal area for seven weeks.
Williams submitted a malpractice claim against Dr. Enriquez to a medical review panel in accordance with the Louisiana Medical Malpractice Act (MMA), La. R.S. 40:1299.41, et seq. On November 18, 1993, the medical review panel concluded that there remained material issues of fact, not requiring expert opinion, bearing on liability which should be determined by a court. On January 28, 1994, the Williamses instituted a medical malpractice suit against Dr. Enriquez and his insurer, the Medical Protective Company. A bifurcated trial on the issue of Dr. Enriquez's liability occurred *437 in October of 1998. The trial court rendered a judgment in favor of the Williamses which was affirmed on appeal in an unpublished opinion.
On December 18, 2001, the trial court rendered a judgment approving a settlement agreement between the Williamses and Dr. Enriquez for the sum of $100,000 plus accrued interest, specifically reserving all rights of the Williamses to seek additional damages from the PCF for the malpractice.[1] The PCF answered the suit on November 6, 2002. The matter of the PCF's damage liability proceeded to a bench trial on October 25, 2004.
Based upon the final judgment, the trial court assessed those damages subject to the $500,000 MMA cap, including inter alia, Mr. Williams' claim for pain and suffering and Mrs. Williams' loss of consortium, at $550,000. These were reduced because of the cap to $500,000, and then the credit for the $100,000 settlement reduced these damages to $400,000. The remaining item of damage, which is not subject to the cap, was the special medical expenses totaling $94,248.10. Therefore, the total judgment rendered against the PCF taking into account the $100,000 settlement and the cap was $494,298.10 (exclusive of court costs and expert fees).

Law
In 1975, the legislature enacted the MMA to establish a framework for compensating persons who are injured as a result of medical malpractice committed by qualified health care providers. Hanks v. Seale, 04-1485 (La.6/17/05), 904 So.2d 662. The MMA limits the liability of a single qualified health care provider to $100,000, plus interest. Id., citing La. R.S. 40:1299.42(B)(2). Any damages awarded or agreed to in excess of $100,000 may be recovered from the PCF, a legislatively created entity which holds private monies in trust to compensate victims of medical malpractice and to protect qualified health care provider members who may be liable for damages caused by their malpractice; however the total amount recoverable, exclusive of future medical care and related benefits, shall not exceed $500,000 plus interest and costs. Id., citing La. R.S. 40:1299.42(B)(1) and (3); Griffin v. Louisiana Patient's Compensation Fund Oversight Bd., 04-0613 (La.App. 1st Cir.3/24/05), 907 So.2d 90. Future medical care includes all past, present, and future medical and related care services necessitated by a qualified health care provider's malpractice. Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210. The statutory $500,000 cap includes loss of consortium damages as they are derivative claims that arise from the same act of malpractice. Coleman v. Deno, 99-2998 (La.App. 4th Cir.11/6/02), 832 So.2d 1016, writs denied, 03-0166,03-0167, 03-0168 (La.9/19/03), 853 So.2d 635; Armand v. State, Dept. Of Health and Human Resources, 97-2958 (La.App. 1st Cir.2/23/99), 729 So.2d 1085, writ denied, 99-0842 (La.5/14/99), 741 So.2d 661; Moody v. United National Ins. Co., 95-1 (La.App. 5th Cir.5/10/95), 657 So.2d 236, writs denied, 95-2063, 95-2085 (La.11/17/95), 663 So.2d 713.
Although the court shall consider the liability of the health care provider as admitted and established where the insurer has paid its policy limits of $100,000, pursuant to La. R.S. 40:1299.44(C)(5), the plaintiff retains the burden of proving that the malpractice at issue caused damages in excess of the $100,000 settlement. Graham v. Willis-Knighton Medical Center, 97-0188 (La.9/9/97), 699 So.2d 365. When a health care provider tenders payment of $100,000, thereby admitting and establishing *438 liability, that admission of liability is an admission of fault and causation of damages of at least $100,000. It is not an admission of the percentage of fault attributable to the health care provider; nor is it an admission as to the extent of the claimant's damages beyond $100,000. Id.

Discussion
We first address the issue raised by the PCF concerning an alleged discrepancy between the court's written reasons for judgment and the judgment which was later rendered by the court. Our review of this issue leads us to the conclusion that the final judgment is indeterminate regarding the damage claims of the two plaintiffs. The judgment in question awarded only one amount, $494,248.10, to both plaintiffs without allocating the portions of that amount which related to the specific items of damage subject to the $500,000 MMA cap. This becomes a critical error because of the PCF's additional claims regarding the excessiveness of each of those damage awards.
Initially, the parties agree that the $94,248.10 award for medical expenses is not subject to the $500,000 cap. Therefore, that award is not a part of the discrepancy which flaws the final judgment.
The written reasons specifically addressed three items of damages which are subject to the cap: (i) Mr. Williams' pain and suffering, (ii) Mrs. Williams' loss of consortium, and (iii) the economic loss of one year of Mr. Williams' income. All three of these items of damage must be considered in relation to the $500,000 cap and the $100,000 settlement payment. It is clear from the testimony that Mr. Williams experienced a $50,000 loss of income and that the award is like a special damage award in that it has a specific basis for calculation. The written reasons for judgment also specifically stated that Mr. Williams suffered $350,000 for his pain and suffering as general damages and that Mrs. Williams suffered a $50,000 loss of consortium. After discussing these three items of cap-related damages, which totaled $450,000, the trial court's written reasons for judgment did not state that this $450,000 would be reduced by $100,000 because of the prior settlement payment. This silence on that subject results in ambiguity.
On the one hand, the written ruling's identification of the $350,000 for Mr. Williams' pain and suffering and the $50,000 to his wife strongly suggests that each listed amount was for the total loss of each plaintiff. If so, the $100,000 prior settlement would be subtracted from these amounts and the $50,000 awarded for economic loss. This would result in a judgment against the PCF of $350,000 for these damages and the $94,248.10 in medical expenses, for a total of $444,248.10. That, however, was not the amount listed in the final judgment.
On the other hand, a concluding sentence in the reasons for judgment stated that the court "will award damages in this case" for the cap-related damages ($450,000) and the $94,248.10 for a total of "$544,248.10 together with interest." This is a clear reference to the proposed judgment against the PCF and would mean that the damage amounts discussed in the ruling were in addition to the $100,000 already received by Williams in the settlement for additional unidentified damages. However, this $544,248.10 amount quoted in the written reasons was also not the amount listed in the final judgment.
Following the trial court's ruling, a judgment was prepared and submitted to the court by Williams' counsel. There is no indication of review and approval of the proposed judgment by counsel for the *439 PCF. The judgment employs the higher view of the awards, identifying the $450,000 in cap-related damages owed by the PCF as discussed in the reasons for judgment. It then states (again ambiguously) that "the court's written reasons [has] already taken into account the credit for the $100,000 paid on behalf of the defendant to which the Louisiana Patients Compensation Fund is entitled." The judgment then recognizes that the $450,000 award plus the prior $100,000 settlement payment comprised $550,000 in total cap-related damages thereby exceeding the $500,000 cap. This resulted in a $50,000 reduction in the $544,248.10 judgment suggested in the court's written ruling. The final judgment against the PCF was therefore listed at $494,248.10. Despite the ambiguity in the reasons for judgment, the asserted discrepancy of the final judgment was not called to the trial court's attention by the PCF through a motion for new trial or otherwise.
From our review of this issue, we agree that there remains a significant problem presented by the trial court's final judgment of $494,248.10 in that it does not clearly identify what were the precise amounts of the economic loss, the pain and suffering loss, and the loss of consortium in the context of the overall $550,000 which the judgment recognized as the grand total for these cap-related damages. While the $50,000 in past economic loss was an amount susceptible of precise measurement[2] which related to Mr. Williams' actual earnings loss in the year following the accident, the other damages are insusceptible of precise measure. La. C.C. art. 1999. Leaving the $50,000 in economic loss constant, the question remains as to whether the trial court intended that the $550,000 in total cap-related damages be allocated for $50,000 for economic loss, $450,000 for pain and suffering, and $50,000 for consortium, or $50,000 for economic loss, $350,000 for pain and suffering, and $150,000 for consortium, or some other combination of awards?[3] In other words, while the written reasons for judgment specifically identified a $350,000 pain and suffering loss and a $50,000 loss of consortium, totaling $400,000, the final judgment increased these damages to $500,000 but fails to specify the allocation of that total between the two categories of general damages owed to the plaintiffs separately.[4] This allocation is relevant for our ability to review the issues presented regarding the alleged excessiveness of the awards in favor of Mr. Williams' for pain and suffering and for loss of consortium. Clearly, an award in favor of Ms. Williams of $150,000 for loss of consortium appears excessive and an abuse of the trial court's discretion. But it is unclear from the final judgment whether such damage award for loss of consortium was made. Additionally, the final judgment does not delineate what amount of the total $494,248.10 is owed to *440 Mrs. Williams or Mr. Williams. The judgment does not identify how the $450,000 in cap-related damages addressed in the written ruling, when increased to $550,000 with the addition of the $100,000 settlement payment toward those same damages, should then be broken down between the two variable categories of general damages in compensation to two separate plaintiffs. This presents an issue of an indeterminate final judgment.
The proper recourse for an error of substance within a judgment is a timely application for new trial or a timely appeal. Bourgeois v. Kost, 02-2785 (La.5/20/03), 846 So.2d 692. The general rule is that an appeal is taken from the judgment and not the reasons for judgment. Johnikin v. Jong's, Inc., 40,116 (La.App.2d Cir.9/21/05), 911 So.2d 413. Further, the general law holds that when there is a conflict between the judgment and the written reasons, the judgment controls. Delahoussaye v. Board of Supervisors of Community and Technical Colleges, 04-0515 (La.App. 1st Cir.3/24/05), 906 So.2d 646. Nevertheless, the jurisprudence also requires that the final judgment itself be precise, definite and certain. Security Nat'l Partners, Limited Partnership v. Baxley, 37,747 (La.App.2d Cir.10/29/03), 859 So.2d 890; Vanderbrook v. Coachmen Industries, Inc., 01-0809 (La.App. 1st Cir.5/10/02), 818 So.2d 906; Murray v. Bierria, 320 So.2d 357 (La.App. 4th Cir.1975); Fontelieu v. Fontelieu, 116 La. 866, 41 So. 120 (1906). If the claim addressed by a purported final judgment is indeterminate, a judgment setting aside the judgment on appeal and a remand have been employed in this jurisprudence.
The problem this final judgment presents is a choice between the two outcomes discussed above which the trial court can clarify. Therefore, we do not choose to set aside the judgment and proceed to enter independent damage awards by de novo review. We believe that, in light of the trial court's thorough review of plaintiffs' damage claims as reflected by its extensive written reasons for judgment, a remand of the matter best serves the interest of justice. La. C.C.P. art. 2164.
Accordingly, we reverse the trial court's judgment which we find to be indeterminate and remand the matter to the trial court for entry of judgment clarifying the issues expressed herein involving the relation of the prior $100,000 damage payment to the amount of general damages suffered by each plaintiff because of the medical malpractice of Dr. Enriquez.
REVERSED AND REMANDED.
NOTES
[1] This procedure occurred pursuant to La. R.S. 40:1299.44.
[2] "Damages for profits cannot be based on speculation, and must be proven within a reasonable certainty." Doss v. Second Chance Body Armor, Inc., 34,788 (La.App.2d Cir.8/22/01), 794 So.2d 97 at 101.
[3] Plaintiffs conclude in their brief that the trial court obviously meant that the $350,000 pain and suffering award specified in its written reasons actually totaled $450,000. We will not venture to guess.
[4] The provisions of La. C.C. art. 2315 create a cause of action for loss of consortium in favor of the spouse of the injured party. Prince v. Conoco, Inc., 529 So.2d 39 (La.App. 3d Cir.1988), writ denied, 532 So.2d 155 (La.1988); William E. Crawford, Developments in the Law 1993-1994: A Faculty Symposium, 55 La. L.Rev. 657 (1995). Consortium and any other personal injury damages are the separate property of the spouse to whom they are awarded. La. C.C. art. 2344; Prince v. Conoco, supra.