MOORE, J.
hBoth the plaintiff, Tasha McBride, and the defendants, Allstate Insurance Company and its insured, Earline Hill, appeal a judgment awarding Ms. McBride’s daughter damages of $20,043.93 as the result of a dog bite. For the reasons expressed, we affirm in part, reverse in part and render.

*328
Factual and Procedural Background

The defendant, Mrs. Hill, lives on O’Keefe Drive in the Swan Lake area of Bossier City. She owns a large-to-medium Chow named Smokey, who weighs 50-65 lbs. According to Mrs. Hill and her daughter, Tierra West, Smokey was always kept in the back yard, which was completely enclosed by a chain-link fence, and tied to a tree. In addition, three “Beware of the Dog” signs were posted: one on the fence gate, one on the rear fence, and one on the tree. On the afternoon of April 24, 2003, Mrs. Hill was at work but 20-year-old Ms. West, a full-time student and resident of NSU in Natchi-toches, had stopped by the house.
The plaintiff, Tasha McBride, was a friend of Ms. West’s. Driving down O’Keefe Drive with her two children, Ocea-na and Desiree (ages 5 and 3⅜, respectively), Ms. McBride stopped to talk with Ms. West. After chatting on the street and then in the driveway for a few minutes, Ms. West invited them into the back yard. Both women testified they came through the house to reach the back porch. Ocea-na and Desiree, along with Ms. West’s two-year-old brother, ran out to the swing set in the back yard. Ms. West admitted she did not warn them to keep away from the dog, but both she and Mrs. Hill insisted that Smokey had never shown any aggressive | ^behavior. The swing set was, at any rate, beyond the reach of the dog’s tether. Ms. West then ducked into the house to get a rag to wipe off the patio chairs.
When Ms. West returned, she saw that Desiree had walked from the swing set over to Smokey. She testified that the child was petting, hugging, rubbing the dog and holding its head, ie., nothing to provoke it. Ms. McBride testified that both her girls had gone over to pet the dog and were not provoking it, but when they turned to go back to the swing set, Smokey suddenly bit Desiree’s right arm just above the elbow. Both women ran out to pull the dog off the child.
Ms. West testified that Ms. McBride got there first and was swatting at Smokey’s face with one of her slippers or flip-flops. Ms. West grabbed the dog and pulled it away. Ms. McBride testified that she “blacked out” and did not recall exactly what happened, but admitted she may have struck the dog with her shoe. Smokey then bit Ms. McBride on the left forearm as she was pulling the child away. Ms. West phoned 911; an ambulance carried Desiree and Ms. McBride to Willis Knighton Bossier, where they were treated and released.
Tasha filed this suit in January 2004, individually and on behalf of Desiree. She alleged that Mrs. Hill and her homeowners’ insurer, Allstate Insurance,[1] were strictly liable under La. C.C. art. 2321 and negligent for their injuries. Allstate answered that Ms. McBride was comparatively or contributorily negligent for allowing her 3já-year-old daughter to play with lathe dog unsupervised. By pretrial memorandum, Allstate also alleged that Smokey posed no unreasonable risk of harm and that Mrs. Hill took every reasonable precaution to protect the public from dog bites.
At trial in August 2005, the witnesses testified as outlined above. Ms. McBride did not recall seeing any of the “Beware of the Dog” signs posted in the yard. She offered hospital records showing that she and Desiree had incurred medical ex *329 penses of $1,371.86 and $2,243.93 respectively, as well as a letter from Dr. John Valiulis, a plastic surgeon. The letter advised that Desiree’s scars “can be revised,” and if performed today the surgery would cost $5,300. However, he did not recommend it until the child was 10 or 11 years old, and even then he could not guarantee a complete revision of the scar.
By written reasons for judgment, the district court made various findings of fact. Noting the conflicting testimony, the court found that Smokey had released Desiree and Ms. West had restrained the dog before Ms. McBride started hitting him with her shoe. After discussing a dog owner’s liability under Art. 2321 and the minor child’s freedom from fault under Dufrene v. Duncan, 93-0403 (La.App. 1 Cir. 3/11/94), 634 So.2d 19, the court awarded Desiree special damages of $2,243.93, future medical expenses of $5,300, and general damages of $12,500, for a total of $20,043.93. The court denied Ms. McBride’s claims for her own injuries as she should have noticed the warning signs around the yard and she in fact provoked the dog. The court assessed costs⅜ to Mrs. Hill and Allstate, andíé to Ms. McBride.
1 ¿Allstate and Mrs. Hill appealed suspen-sively, urging by five assignments of error that the district court erred in finding them liable for Smokey’s behavior. Ms. McBride answered the appeal, urging by three assignments of error that the court erred in denying her own claim for damages.

Applicable Law

The liability of animal owners is regulated by La. C.C. art. 2321, with italicized text marking the special provision for dog owners:
The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable care, should have known that his animal’s behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person’s provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
In the recent case of Pepper v. Triplet, 2003-0619 (La.1/21/04), 864 So.2d 181, the court performed a textual analysis of art. 2321, beginning with Holland v. Buckley, 305 So.2d 113 (La.1974), the seminal case which abrogated the “first bite free” negligence analysis and adopted a strict liability theory. Holland had held that when a domesticated animal harms a person, the master of the animal is presumed to be at fault; in the “crowded society of today, the burden of harms caused by an animal should be borne by its master who keeps him for his own pleasure or use rather than by an innocent victim injured by the animal.” However, the Pepper court did not ^precisely adopt this bright-line approach.
Instead, the Pepper court drew heavily on the strict liability theory as applied to inanimate objects in Loescher v. Parr, 324 So.2d 441 (La.1975). Loescher had held that the guardian of a thing which damages a person is liable to that person when the plaintiff proves the thing which caused his damage was in the garde of the defendant, there was a defect or vice in the thing, i.e., an unreasonable risk of harm was created by it, and the damage oc- *330 eurred because of this defect or vice, unless the guardian can prove the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Moreover, the strict liability theory of Loescher applies to animals. Boyer v. Seal, 553 So.2d 827 (La.1989).
On the crucial issue of whether an animal poses an unreasonable risk of harm, the Pepper court quoted approvingly from Boyer:
As Loescher observes, the person who has the guardianship' and usually the enjoyment of the person or thing should bear the cost of damage caused by risks they create rather than the innocent victim. Further, it is thought that the guardian is in a better position to anticipate, detect, guard against, and insure against these risks, making him a better risk spreader and more efficient conductor of the deterrent effects of civil liability. A competing policy, however, is that the guardian should not be responsible for protecting against all risks; some risks are relatively too small to require him to protect others therefrom.
Pepper v. Triplet, 864 So.2d at 190 (quoting Boyer v. Seal, 558 So.2d at 834).
Finally, the Pepper court studied the effect of the 1996 amendment to art. 2321, which appeared to confer an ordinary negligence standard on the owners of all animals except dogs, for whose owners the strict liability ^standard was retained. 1996 La. Acts, 1st Ex.Sess., No. 1, § 1; Joseph F. Piacun, The Abolition of Strict Liability in Louisiana: A Return to a Fairer Standard or an Impossible Burden on Plaintiffs?, 34 Loy. L.Rev. 215 (1997). The court found that despite the legislature’s omission of terms such as “strict liability” or “unreasonable risk of harm,” nonetheless the amendment effected no “practical change in how the courts should apply article 2321 to dog claims.” The court found that the “could have prevented” provision of the 1996 amendment showed adequate legislative intent to retain the pre-amendment concepts of strict liability and unreasonable risk of harm, with respect to dog owners only.
The court summarized its analysis as follows:
[T]o establish a claim in strict liability against a dog owner under La. C.C. art. 2321 as amended in 1996, the plaintiff must prove that his person or property was damaged by the owner’s dog, that the injuries could have been prevented by the owner, and that the injuries did not result from the injured person’s provocation of the dog. We hold that, to establish that the owner could have prevented the injuries under Article 2321, the plaintiff must show the dog presented an unreasonable risk of harm.
Pepper v. Triplet, 864 So.2d at 184; see also Terral v. Louisiana Farm Bureau Cas. Ins. Co., 39,360 (La.App. 2 Cir. 1/26/05), 892 So.2d 732.
The owner’s liability arises solely from the legal relationship between the owner and the animal; the owner’s duty is nondelegable. Rozell v. Louisiana Animal Breeders Coop. Inc., 434 So.2d 404 (La.1983); Dotson v. Matthews, 480 So.2d 860 (La.App. 2 Cir.1985), writ denied, 481 So.2d 1336 (La.1986).
|7Appeals are taken from the judgment, not from the reasons for judgment. Greater New Orleans Expressway Com’n v. Olivier, 2002-2795 (La.11/18/03), 860 So.2d 22; Williams v. Enriquez, 40,305 (La.App. 2 Cir. 11/17/05), 915 So.2d 434.

Discussion: Liability of Mrs. Hill

By its first four assignments of error, Allstate urges the district court erred in finding Mrs. Hill liable for Desiree’s inju *331 ries arising from Smokey’s dog bite. By three assignments of error, Ms. McBride contends the court erred in failing to find Mrs. Hill liable for her own (Ms. McBride’s) injuries arising from Smokey’s dog bite. Because these issues are governed by the same legal principles, we will discuss them together.
Allstate’s first assignment shows> that the district court made two factual findings in its reasons for judgment: (1) “Smokey did not create such an unreasonable risk of harm as to constitute a case of strict liability against the dog owner pursuant to [art.] 2321,” and (2) Mrs. Hill “acted reasonably in securing the dog in such a position as to prevent it from being able to be on the patio and/or play area in the yard and did provide notice to persons of suitable age of discretion of the presence of the dog[.]” Allstate contends that with these findings clearing Mrs. Hill of strict liability and negligence, it was incongruous and legally wrong to hold her liable for any of Smokey’s conduct. By, its second and third assignments, Allstate urges the court erred in finding that Ms. West was negligent in inviting Ms. McBride and her children into the yard, and even if she was negligent, there was no basis to charge the adult daughter’s negligence to Mrs. Hill. In |ssupport, they cite Corley v. Delaney, 92-899 (La.App. 3 Cir. 12/15/93), 629 So.2d 1255, writs denied, 94-0481, 94-0636 (La.4/22/94), 637 So.2d 156; Verstichele v. Marriner, 2004-354 (La.App. 3 Cir. 9/29/04), 882 So.2d 1265; and Mahlum v. Baker, 25,876 (La.App. 2 Cir. 6/24/94), 639 So.2d 820.
By her three assignments, Ms. McBride counters that the two factual findings quoted above were plainly wrong, that Smokey did indeed pose an unreasonable risk of harm, and that Mrs. Hill is liable for the dog bites to both Desiree and Ms. McBride.
The court ultimately held Mrs. Hill liable for Desiree’s damages, and the appeal is from the judgment, not the reasons for judgment. Greater New Orleans Expressway Com’n v. Olivier, supra; Williams v. Enriquez, supra. Nonetheless, because the district court stated that Smokey posed no unreasonable risk of harm and that Mrs. Hill was not negligent, we are constrained to declare these findings plainly wrong under the rationale of Pepper v. Triplet.
Mrs. Hill, the owner and guardian of Smokey, had the enjoyment and security of keeping a fairly large Chow in her yard; thus she, and not the, innocent victims, should normally bear the cost of damages arising from his dog bites. As owner and guardian, Mrs. Hill was in the superior position tq anticipate, detect, guard against and insure against precisely this type of harm. It is true that she took some precautions by fencing and tethering the dog, and by posting warning signs. However, the record clearly shows that her daughter invited Ms. McBride and her children into the yard, thus | flnegating the protection of the fence and tether. It also shows that Ms. McBride and her children entered the back yard through the house, not through the gate, and thus would not necessarily have seen the signs. In any event it is uncertain that 3/£-year-old Desiree would have understood a sign, had she seen it. Most of all, Mrs. Hill failed to take the obvious precaution of instructing her daughter not to allow children near the dog. There is some testimony that Ms. West even told Ms. McBride that the dog would not bite.
Moreover, on this record, we cannot say that the risk of harm to Desiree and Ms. McBride was “relatively too small” to invoke the guardian’s responsibility. These were invited guests, as distinguished from the virtual trespasser in Pepper v. Triplet *332 who unlocked a gate and entered a yard where he had never been invited. The owner in Pepper took reasonable steps to reduce the risk; Mrs. West simply did not. On this record, Ms. McBride proved that Smokey posed an unreasonable risk of harm.
Finally, to make her case under art. 2321 Ms. McBride had to prove that her injuries did not result from her own provocation of the dog. All witnesses agreed that the children were merely playing with Smokey, and doing nothing to provoke him; this satisfied the burden of proof.
In sum, Ms. McBride proved a case of strict liability under art. 2321 and Pepper v. Triplet, supra. For other reasons, the court awarded her damages for Desiree’s injuries, and this result is not plainly wrong.
inWith the finding of strict liability, we are constrained to hold that the district court erred in failing to find Mrs. Hill liable for Ms. McBride’s injuries. The district court reasoned that Ms. McBride failed to use reasonable caution in reading the warning signs and provoked the dog by striking him after he had already released Desiree. As noted, however, Ms. McBride and her children entered the yard through the house, and she did not notice the signs. Moreover, both witnesses testified that events unfolded very fast; the record persuades us that Ms. McBride’s conduct in swatting Smokey with a shoe was not an intentional provocation but a natural and inevitable reaction to seeing her child’s arm in the dog’s jaws. On this record, Ms. McBride’s conduct was not provocation and her injury was a foreseeable consequence of the dog’s unreasonably dangerous propensity. This portion of the judgment will be reversed and judgment rendered accordingly.
In light of these conclusions, we would discuss Allstate’s other assignments of error very briefly. By its second and third assignments, Allstate contends the fault actually lay with Ms. West, whose negligence cannot be imputed to Mrs. Hill; by its fourth assignment, it urges the fault actually lay with Ms. McBride for failing to supervise her child. The strict liability of the dog owner, however, arises from her relationship with the dog and cannot be delegated to other persons. Rozell v. Louisiana Animal Breeders Cooperative Inc., supra; Dotson v. Matthews, supra. Moreover, in the circumstances presented, Ms. McBride’s conduct was not unreasonable. These assignments of error lack merit.
InThe judgment will be affirmed insofar as it held Mrs. Hill liable for Desiree’s injuries. It will be reversed insofar as it absolved her of liability for Ms. McBride’s injuries, and judgment will be rendered in accordance with this opinion.

Damages

By its fifth assignment of error, Allstate urges the district court erred in awarding future medical expenses in the absence of proof that the procedure was necessary and that Desiree would actually undergo it. Allstate contends that Dr. Valiulis was not called to testify, but only wrote a letter suggesting that Desiree might opt to forgo plastic surgery because of her Latin American heritage. Ms. McBride responds that the court did not abuse its discretion in making this award.
Future medical expenses must be established with some degree of certainty and will not be awarded in the absence of medical testimony showing that they are indicated and setting out their probable cost. Hanks v. Seale, 2004-1485 (La.6/17/05), 904 So.2d 662. The plaintiff must show that, more probably than not, the expenses will be incurred. Kennedy v. Thomas, 34,530 (La.App. 2 Cir. 4/4/01), 784 *333 So.2d 692. While the evidence could have been stronger, we are persuaded by our viewing of the photograph of Desiree’s arm, Exhibit P-2, that she will indeed wish to undergo corrective surgery. We attach no special significance to Dr. Valiulis’s gratuitous remark that the child may elect not to have surgery because of her Mexican and American Indian heritage. We perceive no abuse of the district court’s discretion.
|12By her third assignment of error, Ms. McBride urges the district court erred in failing to award general and special damages for her own dog bite injuries. For the reasons already discussed, she proved her case of strict liability. Statements submitted as part of Exhibit P-4 show that she incurred medical expenses of $1,371.86 for the dog bite; these will be awarded. A letter from Dr. Valiul-is recommended plastic surgery at a cost of $3,800; as with Desiree, the evidence could be stronger, but this strikes us as a necessary revision of a serious bite, and will be awarded. The duration and intensity of her pain and fright from the incident appear to be significantly less than those suffered by Desiree. On this record, general damages of $5,000 are warranted. Judgment will be rendered accordingly.

Conclusion

For the reasons expressed, the judgment is affirmed insofar as it found Allstate and its insured, Mrs. Hill, liable for injuries to Desiree McBride resulting from the dog bite in the total amount of $20,043.93. The judgment is reversed insofar as it found Allstate and Mrs. Hill not liable for injuries to Tasha McBride resulting from the dog bite; judgment is hereby rendered in her favor in the total amount of $10,171.86. All costs are to be paid by the defendants, Allstate and Mrs. Hill.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. In’ the original petition, Ms. McBride referred to the insurer as "XYZ Insurance Company.”