Judgment rendered December 23, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,177-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

ASHLYN FRANKS, INDIVIDUALLY          Plaintiffs-Appellants
AND ON BEHALF OF HER MINOR
CHILD, ADDISON FRANKS

versus

JOSHUA SIKES AND LOUISIANA           Defendants-Appellees
FARM BUREAU MUTUAL
INSURANCE COMPANY

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of Tensas, Louisiana
Trial Court No. 24,014

Honorable Laurie R. Brister, Judge

* * * * *

COX, COX, FILO, CAMEL & WILSON       Counsel for Appellants
By:  Tina L. Wilson
     Richard E. Wilson

MICHAEL E. KRAMER                    Counsel for Appellee,
                                     Joshua Sikes

COTTON, BOLTON, HOYCHICK             Counsel for Appellee,
& DOUGHTY, L.L.P.                    Louisiana Farm Bureau
By:  M. Kyle Moore                   Mutual Insurance Company

* * * * *

Before GARRETT, COX, and HUNTER, JJ.

COX, J., concurs in the result.

**HUNTER, J.**

The plaintiff, Ashlyn Franks, appeals a judgment in favor of the defendants, Joshua Sikes and Louisiana Farm Bureau Casualty Insurance Company. The trial court found that although Sikes was an insured under the insurance policy, the defendants were not liable for the injuries of the minor daughter of Franks. For the following reasons, we reverse the dismissal of plaintiff's claims, affirm the exclusion of expert testimony, and render judgment.

### FACTS

On November 16, 2016, Ashlyn Franks went with her boyfriend, Aaron Johnson, and her 2-year-old daughter, Addison Franks, to the property located on Highway 128 in St. Joseph, Tensas Parish. They were invited by Joshua Sikes, the grandson of the landowner, Ernest Sikes. Joshua stayed in a mobile home on the property and owned a pit bull dog, which was not restrained at the time Franks and her daughter arrived at the property.

Approximately two hours after their arrival, while Addison and her mother were on the porch of the mobile home, the dog attacked the child, causing a severe injury to her lip. Joshua did not see the dog bite the child. He was inside the mobile home when Ashlyn Franks ran inside with the child, who was bleeding from her face. Shortly after the attack, Joshua shot and killed the dog.

The property where the incident occurred was covered by a liability insurance policy issued by Louisiana Farm Bureau Casualty Insurance Company ("Farm Bureau"). The policy provided coverage for the named insured, Ernest Sikes, and relatives who were members of his household.

The insured property consisted of a farm operated by Ernest. At the time of the incident, Joshua was working on the farm and staying in the mobile home situated on the property. When not working, Joshua stayed in his grandfather's home on Bayou Oaks Drive in Monroe. At the time of the dog attack, Ernest was residing at the Monroe house, which Joshua used as his permanent address.

In May 2017, the plaintiff, Ashlyn Franks, individually and on behalf of her minor child, Addison Franks, filed a petition for damages against the defendants, Joshua Sikes ("Sikes") and Farm Bureau. Plaintiff alleged Sikes was liable for the child's injuries which were caused by his dog. Farm Bureau filed a motion for summary judgment alleging the insurance policy did not provide coverage for Sikes. The trial court denied the motion.

After hearing the evidence, the trial court issued written reasons for judgment. The trial court found that at the time of the incident, Sikes was a member of Ernest's household and was an insured covered by the insurance policy of Farm Bureau. However, the trial court determined Sikes was not liable for the child's injuries, finding Sikes did not have a duty to restrain the dog because the dog did not present an unreasonable risk of harm. The trial court rendered separate judgments dismissing plaintiff's claims and excluding the portions of testimony by plaintiff's expert concerning the psychological harm resulting from the child's injuries. Plaintiff appeals the judgments.

### DISCUSSION

The plaintiff contends the trial court erred in finding Sikes was not strictly liable for the injury caused by his dog. Plaintiff argues the dog posed an unreasonable risk of harm because Sikes could have prevented the injury.

2

The owner of a dog is strictly liable for damages from injuries to people caused by the dog which the owner could have prevented and which did not result from the injured person's provocation of the dog. La. C.C. art. 2321. To establish the owner could have prevented the injuries under Article 2321, plaintiff must show the dog presented an unreasonable risk of harm. The plaintiff must show that the risk of injury outweighs the dog's utility such that the dog presented an unreasonable risk of harm. If the dog poses such an unreasonable risk, the owner is strictly liable for the damage caused by his dog. *Pepper v. Triplet*, 2003-0619 (La. 1/21/04), 864 So. 2d 181.

The person who has the guardianship of the thing should bear the cost of damage caused by risks it creates rather than the innocent victim. In addition, the guardian is in a better position to guard against these risks. A guardian is not responsible for protecting against all risks; some risks are relatively too small to protect others therefrom. *McBride v. XYZ Insurance*, 41,129 (La. App. 2 Cir. 6/28/06), 935 So. 2d 326.

The owner's liability arises solely from the legal relationship between the owner and the animal; the owner's duty is nondelegable. *McBride v. XYZ, supra*. The trial court's determination of unreasonable risk of harm is subject to the manifest error standard of review. *Dubois v. Economy Fire & Cas. Co.*, 30,721 (La. App. 2 Cir. 6/24/98), 715 So. 2d 131.

In the present case, Ashlyn Franks testified the dog was walking in the yard and was not restrained when she and her daughter arrived at the property. Franks stated she and her daughter were on the porch with a number of others shortly before the incident. Franks testified she saw her child walk toward a woman holding a baby and suddenly the dog bit

3

Addison in the face, cutting her lip open. Franks stated the child was transported to Rapides Regional Medical Center in Alexandria and surgery to repair her lip was performed the next morning. Franks testified the child could not do physical activity and needed to eat soft food for some period after the surgery. Franks stated Sikes did not ask her if she wanted the dog placed in its kennel. Franks testified she did not actually see the dog bite the child because she had looked away after seeing the child walk toward the baby. Franks stated she did not see the dog or its bowl on the porch as it was getting dark at the time and there was no light on the porch.

Joshua Sikes testified he obtained the dog from a donor in Shreveport and had owned the dog for one week prior to the accident. Sikes stated the dog had not growled at him or tried to bite him during that week. Sikes testified he did not ask Franks about putting the dog in the kennel, but had asked Aaron Johnson if he wanted the dog placed in its kennel and he said that was not necessary. Sikes stated when he went inside the house, the dog and its bowl, which contained food, were on the porch. Sikes testified that during the week prior to the incident, the dog was kept in its kennel while he was working.

The record shows Sikes had owned the dog for one week at the time of the incident and there was no evidence presented of the dog's utility. As the owner, Sikes had the enjoyment of keeping the dog and he, rather than the innocent victim, should normally bear the cost of injury caused by his dog. The testimony demonstrated Sikes did not take any precautions to prevent the risk of harm to others, but allowed the dog to roam without restraint and then he went inside the house leaving the dog on the porch with food in its bowl.

Sikes attempts to deflect responsibility by asserting he asked Johnson if he wanted the dog put in its kennel and by blaming the child's injury on her mother's lack of supervision. However, the liability of Sikes as the dog owner cannot be delegated to other persons.

As this court stated when addressing a similar situation in *McBride*, we cannot say the risk of harm to the child under the circumstances of this case was relatively too small to invoke Sikes' responsibility as the owner, particularly when preventing such serious harm would have required minimal effort. Additionally, the victim here is the child of an invited guest, as distinguished from the situation of *Pepper*, in which the injured person had entered the premises without permission.

As noted above, the attack could have been easily prevented by Sikes if he had placed the dog in its kennel or inside the mobile home while visitors were present. Further, as the dog's owner, Sikes was in a superior position to anticipate and guard against precisely the type of harm sustained by the child. Thus, the dog owner and not the victim should bear the cost of injuries resulting from the dog bite.

Based upon this record, plaintiff proved the dog posed an unreasonable risk of harm and established the strict liability of Sikes under Article 2321. Thus, the trial court erred in finding Sikes was not liable for the child's injuries and we must reverse the judgment dismissing plaintiff's claims.

*Insurance Coverage*

The insurer, Farm Bureau, answers the appeal to assert the trial court erred in finding Joshua Sikes was an insured under the policy issued to Ernest Sikes, the property owner. Farm Bureau argues Joshua Sikes is not

5

an insured under the insurance policy because he was not a member of Ernest's household.

Court decisions considering the term "household" for insurance purposes show an emphasis on dwelling as a family under one head, whether or not the persons live under the same roof. The correct inquiry for determining whether a person is a resident of a particular household with respect to insurance coverage is to determine the individual's attachment to a person or group, rather than to a building. *George v. White Consolidated Industries, Inc.*, 31,133 (La. App. 2 Cir. 11/6/98), 721 So. 2d 573.

In this case, Joshua Sikes testified he lived with his grandfather from the age of 14 until he went to college. Sikes stated that in college he lived in an apartment provided by his grandfather and then in the Monroe house. Sikes testified he was staying in the mobile home on his grandfather's property at the time of the incident and he did not pay rent or utilities. Sikes stated he often stayed with his grandfather in the Monroe house, which he used as his permanent address, and was living there at the time of trial. Sikes testified his grandfather has paid all property expenses wherever he has resided and has always provided whatever financial assistance he needed.

Ernest Sikes, the grandfather of Joshua Sikes, testified he obtained an insurance policy for the farm and provided Sikes with whatever he needed, except for groceries. Ernest stated he has provided Sikes a place to live and paid his expenses since he was 14 years old. Ernest acknowledged Sikes was living with him in Monroe without paying rent at the time of trial.

Based on the evidence presented, Sikes was a member of Ernest's household at the time of the incident, as the trial court determined. During

6

that time, Sikes often stayed with Ernest in the Monroe house and received mail there. When not residing with Ernest, Sikes was staying at property owned by his grandfather and Ernest continued paying a significant portion of Sikes' living expenses. The record shows Ernest's intent to maintain Sikes as a member of his household. Thus, Sikes is an insured under the farm liability policy. Farm Bureau's argument lacks merit.

*Exclusion of Evidence*

The plaintiff contends the trial court erred in excluding the deposition testimony of Dr. Henderson regarding the psychological effect of Addison's injuries. Plaintiff argues the expert's opinion should have been admitted and given due weight by the court.

A district court is accorded broad discretion to determine whether expert testimony should be admissible. A physician's knowledge of the subject matter for which he offers expert testimony is determined on a case-by-case basis. *Hunter v. Bossier Medical Center*, 31,026 (La. App. 2 Cir. 9/25/98), 718 So. 2d 636.

In this case, Dr. Darrell Henderson was accepted as an expert in plastic surgery. He testified that as a part of his specialty he received significant training in psychology with respect to the psychological impact of injuries. As noted by the trial court in its written reasons, Dr. Henderson is not a board-certified psychologist, but received some training in the field of psychology during his residency many years ago. In addition, Dr. Henderson examined the child to give an opinion regarding plastic surgery, not to provide a psychological evaluation.

Although Dr. Henderson stated his training and experience enable him to give an opinion regarding the psychological component of injuries to the

7

face, he did not specify the type or extent of the training he received.  Based upon this record, we cannot say the trial court abused its discretion in excluding that portion of Dr. Henderson's expert testimony concerning his opinion of the psychological impact of the child's injuries.  Thus, plaintiff's assignment of error lacks merit.

*Damages*

The plaintiff contends the trial court erred in failing to award damages for the child's injuries.  Plaintiff argues the record contains sufficient evidence to support an award of damages.

Future medical expenses must be established with some degree of certainty and will not be awarded in the absence of medical testimony showing they are indicated and setting out their probable cost.  Plaintiff must show more probably than not the expenses will be incurred.  *McBride v. XYZ Insurance, supra*.

Medicaid recipients may not collect from a tortfeasor as damages those amounts which have been contractually adjusted by medical professionals and hospitals pursuant to Medicaid programs.  *Bozeman v. State*, 2003-1016 (La. 7/2/04), 879 So. 2d 692.  In this case, the parties stipulated at trial the amount of past medical expenses which plaintiff can recover is $2,461.09, based on adjustments by the medical providers.  We shall award this amount for past medical expenses.

The medical records show the child's injuries required surgery to repair her upper lip. This surgery was done by Dr. Maguire.  The child's final follow-up visit with Dr. Maguire was in June 2017.  Dr. Maguire reported the patient was speaking and eating without difficulty.  He recommended revisionary surgery of the child's lip.

In January 2019, the child was seen by Dr. Henderson, a plastic surgeon, who did not find any functional problems with the lip. Dr. Henderson recommended revisionary surgery and stated the cost would be $9,900 to $12,900. Dr. Henderson testified in his deposition additional surgery may be needed in the future, but he would not know definitely until the child was 15 years old.

Regarding future medical expenses, Dr. Henderson testified plastic surgery was necessary for the child's lip and stated the cost range. Based on the evidence presented, we shall award future medical expenses in the amount of $10,500 for the recommended revisionary surgery.

General damages are those which may not be fixed with pecuniary exactitude. Instead, such damages involve mental or physical pain and suffering, inconvenience and loss of physical enjoyment which cannot be definitely measured in monetary terms. *Giglio v. ANPAC La. Ins. Co.*, 2020-209 (La. App. 5 Cir. 12/23/20), 309 So. 3d 416.

Ashlyn Franks testified her daughter was in pain after the dog bite and needed medical treatment. Franks stated the girl was in distress while in the hospital the night before her surgery because she was allergic to the medication given to her. Franks testified her daughter was restricted from physical activity after the surgery and needed to eat soft food and drink liquids. Franks stated the scar on the child's lip is noticeable and she will need surgery. Franks testified the child is nervous around dogs after being bitten and she has been teased by other children about the appearance of her lip. Franks stated the child has said such teasing upsets her.

The medical records show the child saw Dr. Maguire for three follow-up visits after the surgery. By June 2017, the child did not have pain and she

was able to speak and eat without difficulty. The medical evidence demonstrates the child's pain and problems with eating and speaking caused by the dog bite had largely resolved after a period of seven months.

Based upon this record, an award of general damages in the amount of $5,000 is reasonable. We shall render judgment accordingly.

## CONCLUSION

For the foregoing reasons, the trial court's judgment dismissing the plaintiff's claims is reversed. The judgment excluding from evidence certain portions of the expert's deposition testimony is affirmed. Judgment is hereby rendered in favor of the plaintiff, Ashlyn Franks, in the total amount of $17,961.09. Costs of this appeal are assessed to the appellees, Louisiana Farm Bureau Casualty Insurance Company and Joshua Sikes.

**JUDGMENT DISMISSING PLAINTIFF'S CLAIMS IS REVERSED; JUDGMENT EXCLUDING EXPERT TESTIMONY IS AFFIRMED; RENDERED.**