772 So.2d 868 (2000)
Norma MURILLO, as Natural Tutor of Her Minor Child, Rodolpho Joshua Murillo
v.
Vincent HERNANDEZ and Amor Viviente, Inc.
No. 00-CA-1065.
Court of Appeal of Louisiana, Fifth Circuit.
October 31, 2000.
*869 Max J. Cohen, Paula H. Lee, Lowe, Stein, Hoffman, Allweiss & Hauver, L.L.P., New Orleans, Louisiana, Counsel for Norma Murillo, Plaintiff-Appellant.
James Ryan, III, Glen E. Mercer, Sessions & Fishman, L.L.P., New Orleans, Louisiana, Counsel for Amor Viviente, Inc. and Church Mutual Insurance Company, Defendants-Appellees.
Panel composed of Judges SUSAN M. CHEHARDY, CLARENCE E. McMANUS and H. CHARLES GAUDIN, Pro Tempore.
CHEHARDY, Judge.
This is a dog-bite suit in which plaintiff sought recovery for severe injuries inflicted on her six-year-old son by a 65-pound dog belonging to defendant Vincente Hernandez[1], which Hernandez had left tied up on the property of defendant Amor Viviente Church. The district court awarded judgment to plaintiff against Hernandez in the amount of $381,980.54, but granted a motion for involuntary dismissal by the defendant church and its insurer.
Plaintiff appeals the granting of the involuntary dismissal. The church and its insurer have answered the appeal, seeking damages for frivolous appeal and also seeking a modification of the judgment insofar as it failed to award costs to appellees as the winning parties and failed to dismiss plaintiff's claims with prejudice.
On appeal plaintiff argues the involuntary dismissal was contrary to the law and the evidence. She contends that in order the grant the dismissal, the trial judge made a finding of fact which was not supported by any evidence in the record.
*870 At trial the parties stipulated to the following facts: Joshua Murillo's injuries occurred on July 17, 1994 at approximately 2:30 p.m., on the grounds of property owned by the church, Amor Viviente, Inc. The injury to Joshua Murillo was caused by the dog Spike, owned by defendant Vincent Hernandez, who brought the dog to the property shortly before 10:00 a.m. that day. The church service was conducted between 10:00 a.m. and 12:00 noon by Hector Urbina, the pastor. Hernandez had never brought Spike to the property or church before. Plaintiff, Norma Murillo, had been a member of the church for over four years and had never seen a dog on the property before. Spike was tied to the rear bumper of the truck owned by Hernandez at the time of the incident. Hector Urbina left the area immediately after the service, at approximately 12:00 noon. The incident occurred during the Soccer World Cup Finals. The pastor, Hector Urbina, was not present at the time of the incident. No church officer was present at the time of the incident.
The following facts are drawn from the trial and deposition testimony:
Rodolpho Joshua Murillo (called Josh or Joshua) was on church property to attend Sunday School and to visit his father, who lived in an apartment on church property. By the time of trial he was 12 years old and could no longer recall anything about the dog-bite incident, which had happened when he was six.
Vincent Hernandez testified that Spike was a three-year-old mixed-breed part-Chow dog and weighed about 65 pounds. Hernandez testified that his four children played regularly with the dog and he had never known Spike to be aggressive. He had brought the dog to church that day because his family was out of town and he was planning on staying after church to barbeque and watch the World Cup soccer games on television with a friend who lived in one of the church-owned apartments.
On the day in question Hernandez arrived about 15 minutes before the 10:00 a.m. service. He chained Spike to his truck with a 12-foot chain and gave him some water. Then, before going in to the services, Hernandez chained Spike to a pipe in a shady area beside the church. He checked on the dog around 11:00 a.m. and he was fine.
After the service Hernandez retrieved Spike and drove over to the apartments. He gave Spike some water and let him run loose to play with some children, including Josh. After a few minutes, Hernandez chained Spike to the truck's bumper and went into his friend's apartment. Very shortly he heard Josh scream. The dog bite occurred at approximately 2:30 p.m.
Augusto Patina, the friend whose apartment Hernandez was visiting, was the only eyewitness to the accident. He testified that he could observe Joshua and the dog through his apartment window. He saw the boy playing with the dog normally, but he suddenly attempted to pull the dog's tail and he put his hand "a little deep into the dog" and pulled the dog's testicles as well. The dog then "climbed all over him."
Another church member, Beatrice McDaniel, testified that at around 11:00 a.m. she had seen Josh throwing rocks at Spike, who was tied up. She saw Diogenes Reyes, the church administrator, grab Josh by the arm and tell him to go to his classroom or his father would be notified.
In granting the motion for involuntary dismissal, the trial judge stated in oral reasons for judgment that the law at the time this incident occurred required plaintiff to show that the church had actual knowledge of the dog's vicious propensity. The judge found instead the evidence established that in the pastor's two prior encounters with the Spike, the dog was gentle and friendly. The judge noted that church services had ended some two-and-one-half hours before the incident and that Spike's owner was not attending a church-sponsored function at the time. Further, *871 the pastor had no knowledge that the animal had even been on the premises.
The judge found no merit to plaintiffs' attempt to cast the volunteer administrator-treasurer, Diogenes Reyes, as a representative of the church. Alternatively, assuming that Reyes had been a surrogate for the pastor, the judge stated:
Giving Mr. Reyes, who is not here, the benefit of the doubt; that is, assuming he is a person of normal sensibility and intelligence and circumspection, I can only conclude, because he did not exercise his alleged authority to have a vicious animal removed; that he thought the animal was not vicious and was not dangerous-otherwise he would have had it removed. No evidence had been given to me to conclude he isn't a reasonable, sensible person.
Although a landlord is strictly liable for injuries caused by vices or defects of his building, he is not liable to a third person for injuries caused by his lessee's animal. The strict liability of the animal owner under C.C. art. 2321 cannot be imputed to a non-owner. Parr v. Head, 442 So.2d 1234, 1235 (La.App. 5 Cir. 1983). The landlord may still be liable for negligence under La. C.C. arts. 2315-2316, however, if there is a violation of duty and that violation is a cause-in-fact of an injury. Id. This has been interpreted within this Circuit to mean that the record must show the landlord had actual knowledge of the dog's vicious propensity. Compagno v. Monson, 580 So.2d 962, 966 (La.App. 5 Cir.1991).
As indicated above, on appeal plaintiff argues that the church should be held to have knowledge of the dog's "vicious propensity" because Diogenes Reyes, the volunteer administrator-treasurer, had seen the dog barking at Joshua earlier in the day during the church services. We, like the trial judge, find no merit to that argument. First, the dog-bite incident itself took place hours after the church services were over. Although the incident was on church property, it was in connection with the residential area of the church property rather than in connection with church-related activities. The dog-bite took place in a separate frame of reference from the dog's behavior while tied up next to the church during the service. Further, there was insufficient proof that Reyes had authority to demand that a guest of a tenant of the church's apartments remove an animal.
In defendants' answer to the appeal, they assert the trial court erred in failing to make the involuntary dismissal a dismissal with prejudice and in requiring the church and its insurer to bear their own costs. Further, they seek damages for frivolous appeal.
We find merit to the first two arguments; the judgment of dismissal should have been entered with prejudice. Dampeer v. Dampeer, 96-0708 (La.5/3/96), 672 So.2d 176. Further, it is the general rule that the party cast in judgment is taxed with all costs of a proceeding, although the trial judge may assess the costs of a suit in any equitable manner and his assessment of costs can be reversed only upon a showing of abuse of discretion. Lynch v. Hanover Ins. Co., 611 So.2d 121, 125 (La.App. 5 Cir.1992); Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504 (La.App. 5 Cir.), writ denied 449 So.2d 1359 (La.1984). "Jurisprudence has established that when a prevailing party is taxed with the costs of litigation, it is usually because the party in some way incurred additional costs pointlessly or engaged in other conduct which justified an assessment of costs against that litigant." Lynch, supra. Our review of the record provides no equitable basis for requiring the prevailing parties here, the church and its insurer, to pay their own costs.
We find no merit, however, to the argument that the appeal was frivolous and will award no damages for such.
For the foregoing reasons, the judgment granting the motion for involuntary dismissal *872 is amended to provide that it is a dismissal with prejudice. The judgment is further amended to provide that the costs of Amor Viviente, Inc. and Church Mutual Insurance Company are assessed against plaintiff, Norma Murillo, individually and as natural tutrix of her minor child, Rodolpho Joshua Murillo. In all other respects the judgment is affirmed. Costs of this appeal are assessed against the appellant.
AMENDED AND AFFIRMED.
NOTES
[1] Plaintiff filed an amended petition substituting the name "Vicente Hernandez" for "Vincent Hernandez." Nevertheless, the parties have continued to refer to that defendant as Vincent Hernandez.