MOORE, J.
liThe Housing Authority of the City of Shreveport appeals a judgment holding it hable for a dog bite inflicted by a dog belonging to one of its tenants, Tamika Fair, on another of its tenants, Mary Odom. Finding manifest error, we reverse and render.

Factual and Procedural Background

Mary and Cornell Odom lived in a rent house owned by the Authority at 1161 Dunbriar Dr., in the Cherokee Park area of Shreveport. Their next-door neighbor, Tamika Fair, also rented a house from the Authority. The Odoms testified that in late 2009, Ms. Fair brought a white pit bull to her house and kept it in the fenced backyard. They described the dog as aggressive and vicious, barking at them ferociously and jumping on the chainlink fence to snarl at anyone who happened by. However, Ms. Fair kept the dog in the fenced area, and the Odoms never confronted her about it. Animal Control records showed that on July 28, 2010, Mr. Odom called to report a dog “running loose,” but he did not report the dog was vicious.
On October 8, 2010, shortly after she got home from her job at Horseshoe Casino, Ms. Odom went to her front yard to water flowers when she saw the dog on the loose and coming at her in attack mode. She did not have time to run inside. It bit her upper leg and did not let go until she struck its head with her bucket. Mr. Odom took her to Willis-Knighton Quick Care in Bossier City, and later to other healthcare providers; her medical bills came to $1,933.28. She testified that she had a permanent scar on her thigh.
1 Jn December 2010, Ms. Odom filed this suit against Ms. Fair, alleging her liability as the owner of an animal under La. C.C. art. 2321. However, after the dog bite, Ms. Fair absconded; despite appointing two private process servers, Ms. Odom could never effect service on her. Ms. Fair did not participate in the proceedings.
Ms. Odom filed two amended petitions adding the Authority as a defendant. She alleged that the Authority failed to “monitor” its premises for risks and hazards, failed to require its tenant, Ms. Fair, to keep the dog in a secured area, and allowed its tenant to continue to maintain an animal “known to attack without provocation.”
The Authority denied liability and asserted that its dwelling lease prohibited residents from keeping animals in the dwelling unit, with certain exceptions not applicable to this case and, in all events, subject to approval by the Authority.[1] *1217 The Authority alleged that Ms. Fair signed the lease but never got approval to keep a dog, she was in breach of her lease, and the Authority had no knowledge of her pit bull. The Authority also moved for summary judgment, showing that a landlord is liable for a dog bite caused by its tenant’s dog only if the landlord had actual knowledge of the dog’s | .¡vicious propensity. Turnbow v. Wye Electric Inc., 38,948 (La.App. 2 Cir. 9/22/04), 883 So.2d 469; Murillo v. Hernandez, 00-1065 (La.App. 5 Cir. 10/31/00), 772 So.2d 868. The district court denied the motion on grounds that knowledge is not suitable for disposition by summary judgment.

Action in the District Court

The matter came to trial in November 2013. Cornell Odom testified that the dog barked all the time and “acted like” it wanted to attack humans, but never actually did so until it bit his wife. He confirmed that he called Animal Control on July 28, 2010, and insisted he told them the dog was “vicious,” but admitted that the detailed report admitted in evidence said only that the dog was a stray. He admitted he never called the Authority about the dog, but he stated that on several occasions Authority personnel, wearing uniforms and riding in a marked truck, came to Ms. Fair’s house for maintenance work; they would never enter the backyard until she physically picked up the dog and carried it inside.
Mary Odom confirmed her husband’s testimony, admitting that she never called the Authority to report the dog, as she “assumed” somebody else would. In response to leading questions, she said she relied on her landlord to protect her.
The Odoms also called a Ms. Pickett, an employee of the Caddo Parish Animal Shelter, who verified Mr. Odom’s report of a stray dog in July 2010, and testified it was not the Shelter’s policy to notify a landlord of a complaint about an animal at his property.
|40n cross-examination, Travis Bogan, an executive at the Authority, confirmed that the lease prohibited Ms. Fair from having a pit bull on the property, and that she had'no exemption from the prohibition. Mr. Bogan admitted that the Authority could have evicted her for this violation had he known about it. He showed that the Authority sent Ms. Fair a notice on February 24, 2010, advising that it would inspect her premises on March 4, 2010, between 8 a.m. and noon; he agreed that the inspector, if he saw a dog, would be required to report this fact to the Authority. There was, however, no report of a dog, and Mr. Bogan insisted he had no knowledge of Ms. Fair’s pit bull until it bit Ms. Odom. On direct exam, Mr. Bogan clarified that his employees came to rent houses to perform maintenance, not to enforce pet policy, and they had no duty to report unless the animal was acting vicious or aggressive. The Authority called no *1218 maintenance workers to confirm or refute seeing Ms. Fair’s dog.
The court ruled from the bench that this “is not a 2321 article case,” and distinguished Tumbow and Murillo on grounds that Ms. Odom was not a guest on the property but a next-door neighbor. The court found that the Authority had a duty to protect her, and the dog had aggressive behavior. The court accepted Mr. Odom’s testimony that Authority employees had come to Ms. Fair’s house and seen the dog; ergo, the Authority had actual knowledge of its viciousness. The court found the Authority 100% at fault for the injury, declining to assess any comparative fault for the Odoms’ failure to report the dog earlier. The court totally omitted any mention of Ms. Fair’s liability as the owner of a vicious dog. The court awarded | .^general damages of $15,000 and the special damages of $1,933.28.
The Authority has appealed, raising four assignments of error.

Discussion

By its first two assignments of error, the Authority urges the court erred in finding that it had actual knowledge of a vicious animal being located on the property, or that its employees had knowledge that could be imputed to the Authority. It urges that to be liable for a tenant’s dog, a landlord must have actual knowledge of the dog’s aggressive nature, citing Tum-bow and Murillo, supra. It shows that the Odoms did not report the dog to the Authority; their report to Animal Control was only about a stray dog, not a vicious one; and they presented no evidence to corroborate their claim that this pit bull was aggressive. It also argues that in Tumbow, supra, the landlord’s employees knew there were several pit bulls and a bullmastiff on the premises, and the court found this evidence insufficient to impute knowledge to their employer. It concludes the court was plainly wrong to find actual or imputed knowledge. These interrelated arguments have merit.
Liability for damage caused by animals is regulated by La. C.C. art. 2321, which provides as follows:
The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise pf reasonable care, should have known that his animal’s behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person’s | (¡provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine 'of res ipsa loquitur in an appropriate case.
A plaintiff seeking damages for a dog bite must show that the dog posed an unreasonable risk of harm. Pepper v. Triplet, 2003-0619 (La.1/21/04), 864 So.2d 181; McBride v. XYZ Ins. Co., 41,129 (La.App. 2 Cir. 6/28/06), 935 So.2d 326. The dog owner’s liability arises solely from the legal relationship between the owner and the animal; the owner’s duty is nondelegable. Rozell v. Louisiana Animal Breeders Coop. Inc., 434 So.2d 404 (La.1983); McBride v. XYZ Ins., supra. A lessor or landowner may also be found liable, on a theory of general negligence, for injuries caused by a tenant’s dog, but only on a showing that the lessor or landlord had actual knowledge of the animal’s vicious propensities. Tumbow v. Wye Elec., supra; Murillo v. Hernandez, supra; Smith v. Kopynec, 2012-1472 (La.App. 1 Cir. 6/7/13), 119 So.3d 835.
*1219 The appellate court will not set aside the district court’s factual finding unless it is manifestly erroneous or clearly ■wrong. Broussard v. State, 2012-1238 (La.4/5/13), 113 So.3d 175, and citations therein. The appellate court’s duty is not to review the findings for absolute correctness but to determine whether they are reasonable on the record as a whole. Id.; Stobart v. State, 617 So.2d 880 (La.1993).
On close review, this record does not support the district court’s finding of actual knowledge on the part of the Authority. Although the Odoms established that the dog barked a lot and clawed at the fence with its paws, there is no evidence that it ever bit or attacked anyone prior to this |7incident. There is also no evidence that the Odoms ever reported the dog to the Authority; the one time Mr. Odom notified Animal Control, he called it a stray, not a vicious animal. Admittedly, they testified that Ms. Fair carried the dog inside when the Authority’s maintenance men called; however, Mr. Bogan testified without contradiction that his employees were not tasked with enforcing pet policy or inspecting for technical violations of the lease. Simply put, this evidence does not approach the threshold showing of actual knowledge required to impose landlord liability under Tumbow, Kopynec and Murillo, supra. In fact, this showing is considerably weaker than that made in Tumbow, in which this court affirmed a finding that the landlord did not have sufficient actual notice to be liable for injuries caused by its tenant’s dog. The court’s finding is manifestly erroneous and must be reversed.
With this finding, we pretermit any consideration of the Authority’s remaining arguments. We would only reiterate that under La. C.C. art. 2321, the dog owner’s liability is a form of strict liability premised on the relationship between the owner and the dog, and is nondelegable. Rozell v. Louisiana Animal Breeders Coop., supra; McBride v. XYZ Ins., supra. Hence, if the district court found that the dog posed an unreasonable risk of harm, it was legal error to assign no liability to the owner, Ms. Fair; however, this determination is unnecessary, as the claim against the Authority fails for lack of actual knowledge. We would also note that the award, while on the high side, is subject to the “much discretion” of the judge or jury. La. C.C. art. 2324.1; Howard v. Union Carbide Corp., 2009_£7508 (La.10/19/10), 50 So.3d 1251; Guillory v. Lee, 2009-0075 (La.6/26/09), 16 So.3d 1104.

Conclusion

For the reasons expressed, the judgment is reversed insofar as it found the Housing Authority of the City of Shreveport liable for the dog bite and awarded damages. Judgment is rendered herein dismissing all claims against the Authority. Trial and appellate costs are assessed to Ms. Odom.
REVERSED AND RENDERED.
BROWN, C.J., concurs.

. The dwelling lease, HVII(M), states that the resident shall be obligated: "To keep no animals in the dwelling unit, with the exception of birds, fish, hamsters and other miniature pets (only one pet may be kept in any one *1217 dwelling unit) which are customarily kept in interior cages and containers; however, this does not preclude the Resident from keeping an animal which has special training to help the Resident or a member of the Resident’s household to cope with a physical impairment, subject to the condition that the Resident has satisfactorily provided documented evidence to the Authority regarding the training of the animal and the physical impairment. This Lease must be amended to allow the Resident to keep pets other than those mentioned within this paragraph. The keeping of a pet by a Resident who is sixty-two (62) or older, is disabled, or is handicapped (as defined by the Authority and HUD), or by a member of the Resident's household who is age sixty-two (62) or older, is disabled, or is handicapped (as defined by the Authority and HUD) must be approved first by the Authority and be in accordance with the Pet Rules established by the Authority and approved by HUD."