Judgment rendered July 22, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,520-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SUSHMA KSHIRSAGAR AND          Plaintiffs-1st Appellants
DEELIP KSHIRSAGAR

versus

STATE FARM INSURANCE CO.,       Defendants-2nd Appellants
CAROL PEREZ AND
DANIEL G. PEREZ, JR.

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2016-2744

Honorable Wilson Rambo, Judge

* * * * *

EDDIE CLARK & ASSOCIATES, LLC          Counsel for 1st Appellants
By: Eddie M. Clark

MARSHALL L. SANSON

HUDSON, POTTS & BERNSTEIN, L.L.P.       Counsel for 2nd Appellants
By: Jan P. Christiansen, III

* * * * *

Before WILLIAMS, COX, and McCALLUM, JJ.

**WILLIAMS, C.J.**

The plaintiffs, Sushma Kshirsagar and Deelip Kshirsagar, appeal a jury's verdict which they claim awarded insufficient general damages for Sushma's injuries resulting from an attack by a neighbor's dog. They also appeal the jury's failure to award damages for Sushma's future medical expenses and for Deelip's claim for loss of consortium. The defendants, State Farm Insurance Company, Carol Perez, and Daniel G. Perez, Jr., appeal the jury's finding of liability and the trial court's denial of their motion to assess court costs to the plaintiffs. For the following reasons, we amend in part, affirm as amended and render.

## FACTS

On September 13, 2015, the plaintiff, Sushma Kshirsagar, was walking on a sidewalk in her neighborhood in West Monroe, Louisiana. A "mixed breed" dog owned by the defendants, Carol and Daniel Perez, Jr., was attached to a metal cable leash, which Carol testified she was holding in her hand. The dog broke away from its leash, ran across the street and attacked Sushma, biting her on the leg and hip multiple times.

Sushma was treated in the emergency room at Glenwood Regional Medical Center. Her treatment included 28 stitches to her right leg and injections of antibiotics and pain medication. She was discharged from the emergency room with instructions to remain on bedrest for seven days and to follow up with her primary care provider within two to three days.

Sushma and her husband, Deelip Kshirsagar, filed a lawsuit against Carol, Daniel and their homeowners' insurer, State Farm Insurance Company ("Defendants"). The plaintiffs alleged as follows: Sushma sustained significant injuries as a result of the dog's attack, which resulted in

permanent scarring on her right hip and lower right leg; Sushma suffers from chronic/recurring pain and swelling in her right leg, an inoperable tear to her Achilles tendon, and scar tissue impinging on a nerve in her lower right extremity; and Sushma was entitled to an award of damages for future medical treatment to cover the cost of future pain management and scar revision surgery. The plaintiffs also alleged that Deelip was entitled to an award of damages for loss of consortium.

A jury trial was conducted and several witnesses were called to testify. Sushma testified as follows: she was walking in her neighborhood when she heard a dog barking; she stopped and looked around but did not see a dog; when she resumed walking, she saw a large brown and white dog running in her direction; the dog appeared to be "very vicious, angry" and ran "really aggressively"; she did not see a leash on the dog; she became frightened and began calling for help but she did not see anyone; the dog began biting her right leg and ankle; she "screamed and begged" for help, but she did not see anyone nearby; she struggled to keep from falling to the ground because she believed the dog would attack her neck area if she did so; the dog continued to "dig into" her leg and began "jumping on [her] upper body"; the dog then "latched on[to]" her hip; she continued to scream but no one came to her aid; the dog began biting her inner right leg; at that point, she heard the dog's owner (Carol) calling him; Carol could not control the dog; she asked Carol to "please help me, take him off"; the dog continued to bite her leg "for some time"; Carol struggled to pull the dog away from her; she did not see a chain or leash on the dog during the attack; she did not know how Carol managed to pull the dog away from her because she was "in so much pain" and she was losing "so much blood"; she began

to feel "dizzy and nauseous"; she fell to the ground after Carol gained control of the dog; she asked Carol, "Why didn't you come quickly?"; Carol replied that she "was coming"; she called 911, but was unable to provide the operator with the address of the incident; Carol left the scene to put the dog away, but returned and called 911 to provide the location; the ambulance arrived approximately 15 minutes after Carol called; her husband was working out of town and her children were at home alone; and she called a friend to care for her children while she was being transported to the emergency room.

The defendant, Carol, testified as follows: she was the owner of the dog that attacked the plaintiff; the dog was "part Cur and part Lab," approximately 3½ years old, and weighed 40-45 pounds; she did not have a fence around her yard and her dog generally remained indoors; the dog was always restrained by a leash when outside; Sushma did not do anything to provoke the dog's attack; the dog ran across the street and attacked Sushma on a public roadway; prior to the attack, she and her dog were in her front yard; she was preparing to take the dog inside and was holding a part of the leash in her hand when the dog began running "very fast"; she "had to release the leash" because it was "kind of like, hurt[ing] [her] hand"; the leash was a 30-foot "cable leash"; the leash would "hurt your finger" when it was pulled; the leash could have "cut off" her finger if the dog had continued to pull on it; she was familiar with the leash because she had owned it for "two to three years"; the dog had been trained at a "training school" and had been taught "how to follow commands"; the dog had never bitten anyone in the past; prior to the attack, the dog would routinely be restrained by a leash tied to a tree in the front yard; the dog had a tendency

3

to run toward strangers as far as the leash would allow him to do so; on the morning of the attack, she was outside working in her flower bed while the dog played in the yard; when she decided it was time to go inside, she grabbed the dog's leash; the dog "turned around all of a sudden and started running toward the driveway"; she dropped the leash because it "hurt [her] hand" when the dog began to run; the dog "continued running toward the end of the driveway [and] broke his leash"; she "tried to step on the leash to catch it but he was just so fast"; she was unable to hold onto the leash with her foot because it "burned [her] foot because [she] was barefoot at that time"; she "tried [her] best" to stop her dog from attacking Sushma; she did not see the dog when he first began biting Sushma because her "attention was divided" between the dog and the leash; she heard Sushma screaming and "everything was just a blur"; when she approached the scene, the dog was still biting Sushma; she was afraid to remove her dog from Sushma "because of his aggression"; Sushma collapsed to the ground after she [Carol] gained control of her dog; she cannot say that the dog had "aggressive tendencies" prior to the attack; she does not know why the dog attacked that day; Sushma did not have a chance to react prior to the attack; Sushma called 911; she did not call 911 because she did not have her phone with her and she had to get her dog "secured inside the house"; she called 911 after Sushma asked her to call and provide the correct address;[1] she is "in the medical field" but she did not attempt to render aid to Sushma; she offered to drive Sushma to the hospital in her sports utility vehicle; Sushma declined because she was unable to get up and the vehicle was "too high"

---

[1] The audiotapes of both 911 calls were played in open court in the presence of the jury.

from the ground; after the attack, she went to the emergency room and paid Sushma's "co-pay" for her emergency room visit; she also followed Sushma to the pharmacy and paid for her medication; she sent Sushma a text message, instructing her to send her hospital bill to her; she did not pay the hospital bill because Sushma did not send it to her; she surrendered her dog to Animal Control to be quarantined; the dog was returned to her after approximately 10 days; after the incident, she began keeping her dog on a different type of leash; and she no longer ties her dog's leash to a tree in her front yard.

Deputy Michael Meredith, of the Ouachita Parish Sheriff's Office, also testified at trial. He stated as follows: he arrived on the scene of the incident and observed Sushma "laying in a yard just off the edge of the road"; he noticed that Sushma had a "bite or a laceration to her right leg"; he was unable to tell if Sushma had multiple bites; Sushma appeared to be "in pain" when he arrived; the ambulance arrived shortly after he arrived; he talked to Sushma and Carol at the scene; he could not recall seeing the dog; he believed the dog had been taken inside the house before he arrived; he did not see a broken dog chain at the scene; Carol informed him that the dog "bolted" and broke its leash when he saw Sushma walking on the sidewalk; and Sushma declined to "press charges" against Carol.

With regard to her medical treatment and recovery, Sushma testified as follows: she was "bedridden" for approximately 6-7 days; during this time, her husband and her 13-year-old daughter assisted her with her and the family's activities of daily living; initially, her orthopedic surgeon recommended physical therapy two to three times per week for four weeks; she attended 10 sessions; her physicians recommended exercise; after the

attack, she developed a fear of dogs and was unable to exercise outside; she joined a fitness center to exercise so that she could work out indoors; she was unable to perform "group exercise" because of her injury; she was unable to complete cycling/spin classes; walking for exercise became difficult; she learned that she had a partially torn right Achilles tendon as a result of the dog bite; she also learned that the tear was inoperable because of its location; she went to a plastic surgeon because of the scarring on her right leg; the surgeon estimated that the surgery would cost $3,550; and her health insurance would not cover the cost of the surgery.

The plaintiff further testified as follows: prior to the injury, she was able to walk "four to five miles without any issues"; since the injury she experiences pain and swelling in her right leg after walking "one mile or so"; she could no longer stand for prolonged periods to do certain activities such as cook, volunteer at the Food Bank and her daughter's school and host parties at her home; she has difficulty riding a bicycle and climbing stairs; she can no longer play basketball and Frisbee with her children; she is unable to assist her husband with yardwork; she experiences pain in her leg when she drives long distances; after the attack, she went to India to visit her elderly mother and three older brothers; she experienced pain and swelling in her leg during the long flight; and the attack caused her to experience depression and anxiety.

During cross-examination, the plaintiff testified as follows: she did not see Carol outside with the dog prior to the attack; she looked around when she heard the dog barking but she did not see anyone; she went to an orthopedic surgeon approximately two months after her injury because she was experiencing pain, tenderness, swelling and sensitivity; and she was

6

discharged from one physical therapy clinic in November 2016 for failure to adhere to the attendance policy because her insurance would not pay for the sessions and she could not afford the out-of-pocket expenses.

The jury was also presented with additional evidence with regard to Sushma's medical treatment. Rebecca Sherwin, a physical therapist, testified that she provided care for Sushma beginning on March 1, 2016. She stated that Sushma was referred to physical therapy by her orthopedic surgeon, Dr. Douglas Brown, and she presented with complaints of "pain in her right calf from her lower leg down to the outside ankle." Sherwin testified that Sushma exhibited significant deficits on the lower extremity functional scale. According to Sherwin, Sushma's pain level improved after 10 sessions of therapy, but she never became pain-free.

During cross-examination, Sherwin testified that Sushma's pain level varied, and she reported that her pain was worse in the mornings, after sitting for a while and after exercising. She stated that over the course of treatment, Sushma became "able to walk with a more normalized gait pattern." She also testified that Sushma improved from a 22 out of 80, to 54 out of 80 on the lower extremity functional scale.

Amanda Power, a licensed professional counselor, was accepted by the trial court as an expert in the field of licensed professional counseling. She testified as follows: Sushma sought counseling for "a lot of anxiety and trouble operating as she had operated previous to [the dog] attack"; she diagnosed Sushma with post-traumatic stress disorder ("PTSD"); the attack changed Sushma's attitude, outlook, mood and her ability to interact with her family as she did prior to the attack; Sushma experiences "a real sense of impending doom" when she is outdoors; Sushma also experiences

"debilitating" panic attacks; all of Sushma's psychological issues appear to stem from the dog attack; and Sushma could fully recover if she is able to engage in intense emotional therapy and/or inpatient treatment.

During cross-examination, Power testified that she had eight counseling sessions with Sushma over a two-year period. She also testified that while she can recommend that a patient be admitted to a medical facility, the medical director would make the decision regarding the admission.

The video depositions of Dr. Brown and Dr. Brian Bulloch, another orthopedic surgeon, were also introduced into evidence at trial. Dr. Brown testified that Sushma suffered a penetrating injury that caused a "chronic hematoma." According to Dr. Brown, the hematoma caused the formation of scar tissue that affected the smaller nerves in Sushma's right leg. He also testified that Sushma's MRI revealed a partial tear in her right Achilles. Dr. Brown described Sushma's injuries as permanent and opined that the pain and issues she continued to experience would never resolve.

Dr. Bulloch also testified that Sushma has scar tissue that has resulted in "nerve root irritation." He also testified that Sushma's complaints are likely permanent and that she should expect to experience chronic pain and swelling when performing certain activities. Dr. Bulloch stated that he does not know of any medical treatment that would eliminate Sushma's symptoms.

After hearing the testimony and reviewing the evidence, the jury concluded that the defendants' dog did not create an unreasonable risk of harm. However, the jury found that the defendants breached the applicable standard of care and the plaintiff's injuries were caused in whole or in part

8

by the defendants' conduct.  The jury awarded damages as follows:

| | |
|---|---|
| Past medical expenses: | $15,172.55 |
| Future medical expenses: | $0 |
| Physical pain, suffering, and disability (Past, present and future): | $10,000 |
| Mental pain, anguish and emotional distress (Past, present and future): | $5,000 |
| Loss of enjoyment of Life: | $1,000 |
| Loss of Consortium: | $0 |

Thereafter, the plaintiffs filed a motion for JNOV, new trial or additur, and to tax court costs to the defendants.  The trial court granted the motion to tax costs to the defendants but denied the other motions.  The defendants filed a motion to tax costs to the plaintiffs; the court denied the motion.

The plaintiffs and the defendants appeal.

## DISCUSSION

*Liability*

The defendants contend the jury erred in finding them liable to the plaintiff for her injuries.  They argue that the jury erred in finding that the plaintiff proved by a preponderance of the evidence that the defendants' conduct fell below the applicable standard of care.  According to the defendants, the plaintiff failed to meet her burden of proving that the dog presented an unreasonable risk of harm.

Liability for damage caused by animals is regulated by La. C.C. art. 2321, which provides as follows:

> The owner of an animal is answerable for the damage caused by the animal. However, he is answerable for the damage only upon a showing that he knew or, in the exercise of reasonable

9

care, should have known that his animal's behavior would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nonetheless, the owner of a dog is strictly liable for damages for injuries to persons or property caused by the dog and which the owner could have prevented and which did not result from the injured person's provocation of the dog. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

A plaintiff seeking damages for a dog bite must show that the dog posed an unreasonable risk of harm. *Pepper v. Triplet,* 2003-0619 (La. 1/21/04), 864 So. 2d 181; *Odom v. Fair*, 49,274 (La. App. 2 Cir. 8/20/14), 147 So. 3d 1215.  Nevertheless, if a plaintiff also asserts facts in his or her petition giving rise to a claim for negligence, a court should, after finding the absence of strict liability, consider a negligence cause of action.  *Pepper v. Triplet*, *supra*.

Herein, the plaintiffs' petition asserted various acts of negligence on the part of the defendants, including the breach of their legal duty of reasonable care.  More specifically, the plaintiffs alleged specific acts of negligence as follows:

A. Careless handling of an animal;

B. Inattentive or distracted;

C. Failing to maintain a proper lookout for individuals walking by house;

D. Failing to maintain control of the animal with proper restraint;

E. Failing to take appropriate action to avoid or mitigate the dog attack, when in the exercise of due care she should have had ample time and opportunity to do so;

F. Failing to properly institute safety;

G. Violating regulations, laws, and ordinances; [and]

10

[H].	Many other acts of fault, negligence and strict liability to be shown at trial.

After hearing the testimony and considering the evidence, the jury concluded that the defendants breached the applicable standard of care and the plaintiff's injuries were caused in whole or in part by the defendants' conduct.

Louisiana courts have adopted a duty-risk analysis in determining whether liability exists under the facts of a particular case. Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and, (5) actual damages. *Bufkin v. Felipe's Louisiana, LLC*, 2014-0288 (La. 10/15/14), 171 So. 3d 851; *Flipping v. JWH Properties, LLC*, 50,648 (La. App. 2 Cir. 6/8/16), 196 So. 3d 149. The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty and whether a duty is owed is a question of law. *Bufkin, supra.*

An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Cole v. State Dept. of Public Safety & Corr.*, 2001-2123 (La. 9/4/02), 825 So. 2d 1134; *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993); *Jewitt v. Alvarez*, 50,083 (La. App. 2 Cir. 9/30/15), 179 So. 3d 645.

11

Our jurisprudence summarizes the manifest error/clearly wrong standard of review as follows:

> To reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Stobart*, *supra*; *Jewitt*, *supra*.

> Even if an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Cole*, *supra*; *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989).

> Moreover, where the factfinder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Rosell*, *supra*; *Jewitt*, *supra*.

In the instant case, Carol testified that she was in the process of removing the leash from her dog when he "bolted." She admitted that she dropped the leash because she feared that her hand would be injured if she held onto it. Carol also admitted that she did not immediately stop the dog's attack on Sushma because of the dog's "aggression."

It is undisputed that Carol had a duty to keep the animal under control to prevent him from harming others. By her own admission, Carol failed to do so. Sushma sustained actual damages as a result of the defendant's conduct. Accordingly, we find that Carol's substandard conduct was a cause-in-fact and legal cause of the plaintiff's injuries. Consequently, from this record, we find that a reasonable factual basis exists for the jury's finding of negligence.

12

*Damages – General Damages*

Sushma contends the jury's award for general damages ($16,000) was "insufficient." She assert that the dog's "savage" attack lasted several minutes, and she was "afraid for her life." Sushma also asserts that her injuries required 28 stitches, and she endured one week of bedrest, an extended course of antibiotics, pain medication, multiple visits to physicians and physical therapy. According to Sushma, she has a permanent physical injury, and she suffers from chronic pain and swelling which limit her physical activity. She also avers that she has permanent physical scars on her hip and lower right leg. Further, the attack has caused her to be fearful of dogs and going outside, and to experience anxiety when her husband and daughters go outside. Additionally, the plaintiff incurred over $15,000 in medical expenses. Thus, based on the evidence, the jury's award of $16,000 in general damages was abusively low. According to Sushma, the evidence presented justified an award of at least $75,000 in general damages.

One damaged through the fault of another is entitled to full indemnification for the damages caused thereby. La. C.C. art. 2315; *Wainwright v. Fontenot*, 2000-0492 (La. 10/17/00), 774 So. 2d 70; *Jones v. Fin. Indem. Co.*, 52,421 (La. App. 2 Cir. 1/16/19), 264 So. 3d 660. General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of lifestyle which cannot be definitely measured in monetary terms. *Bellard v. American Cent. Ins. Co.*, 2007-1335 (La. 4/18/08), 980 So. 2d 654; *Jones, supra*. The trier of fact has much discretion in the assessment of general damages. La. C.C. art. 2324.1. The role of the appellate court in reviewing

13

general damage awards is not to decide what is an appropriate award, but to review the exercise of discretion by the trial court. *Wainwright*, *supra*; *Jones*, *supra*.

In *Smegal v. Gettys*, 2010-0648 (La. App. 1 Cir. 10/29/10), 48 So. 3d 431, the plaintiff was bitten on his left ankle by his neighbor's dog. The dog gripped the plaintiff's ankle so strongly that he was dragged approximately 6 feet while the plaintiff hopped around in an attempt to extricate himself. The dog bite resulted in a large laceration on the plaintiff's foot, and he was treated by paramedics at the scene and in the emergency room for several hours. He was discharged from the emergency room with prescriptions for antibiotics and pain medications and was advised to follow up with his physician in two days. He was later hospitalized for several days after the wound became infected. The plaintiff's MRI showed that he did not suffer a torn Achilles tendon. Following a bench trial, the court awarded general damages, in the amount of $20,000, for "pain, suffering, scarring and disfigurement." The appellate court affirmed the award of general damages.

In *Kannon v. Rayburn; Allstate Ins. Co.*, 2014 WL 2885319 (La. 19 JDC 2/26/2014), the plaintiff, a 67-year-old female, was the victim of a dog attack and suffered lacerations and puncture wounds to her right leg that resulted in permanent scarring. She subsequently developed cellulitis, which resulted in permanent nerve damage in her right leg. The plaintiff was awarded $30,000 for pain and suffering.

In *Odom v. The Shreveport Housing Authority*, 2013 WL 8364653 (La. 1 JDC 11/6/2013) (later reversed on liability), the plaintiff, an adult female, was bitten by a dog owned by a tenant that leased her residence from the defendant. The plaintiff suffered dog bite wounds to her upper left thigh

14

that required medical treatment and the administration of antibiotics; she had some permanent scarring. The plaintiff was awarded $1,933.28 in past medical expenses and $15,000 in general damages.

In *Guilbeau v. LaFontaine*, 2012 WL 3682967 (La. 15 JDC 4/5/2012), the plaintiff, a postal worker, suffered a severe dog bite to his abdomen and was required to undergo a series of rabies vaccinations when he was attacked by the defendant's dog while delivering mail. The plaintiff also suffered intermittent pain and permanent scarring due to the incident. Following a bench trial, the plaintiff was awarded $41,866 in damages.

In *Richardson v. Goetting*, 2011 WL 6940644 (La. 19 JDC 8/17/2011), the plaintiff was walking on a bicycle/pedestrian path when she came upon the defendant who was walking her dog on a 10-foot leash. As the plaintiff approached, the dog attacked her, biting her on her left calf. The defendant attempted to free the dog's mouth from the plaintiff's leg, but was not immediately successful. When the dog finally released the plaintiff, the defendant caused the plaintiff to experience additional anxiety by holding the dog directly above the plaintiff. The plaintiff was subsequently taken by ambulance to Baton Rouge General Medical Center for treatment. The jury returned a verdict in favor of the plaintiff and awarded $100,000 for general damages, $15,000 for past medical expenses, $120,000 for future medical expenses, $100,000 for loss of enjoyment of life and $25,000 for disfigurement.

In the instant case, the dog attack resulted in multiple lacerations to Sushma's right leg and hip. She suffered a partial tear to her Achilles tendon, an injury that her orthopedic surgeons agreed could not be repaired with surgery. Sushma also received emergent treatment, which included 28

15

sutures to her injured leg and hip, pain medication, antibiotics, a vaccine, and instructions with regard to possibly contracting rabies as a result of being bitten by a dog. After receiving treatment at the scene and in the emergency room, Sushma was discharged with instructions to follow up with her physician. Sushma testified that she experienced severe pain and anxiety at the time of the attack. She also testified that she continues to experience pain and swelling, particularly when attempting to perform certain activities. She also experiences anxiety about being outdoors and when her children are outdoors. Deelip testified that Sushma was no longer able to do many of the things she enjoyed doing in the past. He stated that she was unable to attend to her garden, cook large meals and entertain family and friends without experiencing pain.

Additionally, Drs. Bulloch and Brown described the plaintiff's pain as chronic and opined that it is unlikely to improve. Dr. Brown testified that Sushma sustained a penetrating injury to her calf muscle, which resulted in the formation of scar tissue. Dr. Brown also testified that he elected not to perform surgery on the injury to Sushma's Achilles tendon to prevent the formation of additional scar tissue. Both orthopedic surgeons unequivocally testified that Sushma's condition is permanent. The defendants did not present any medical evidence to contradict the physicians' testimony.

While we recognize the jury's great discretion in this matter, we conclude that the $16,000 past pain and suffering award was unreasonably low under the circumstances of this case, particularly in light of the fact that her medical expenses exceeded $15,000. As noted above, in *Smegal v. Gettys*, *supra* (a 10-year-old case), the plaintiff sustained a less severe injury from a dog attack and was awarded $20,000 in general damages. Therefore,

16

we hereby amend the trial court's judgment to award the plaintiff a total of $45,000 in general damages. We consider this amount to be the lowest reasonable amount for past and future pain and suffering and loss of enjoyment of life under the facts in this case.

*Damages – Future Medical Expenses*

The plaintiff contends the jury erred in failing to award damages for future medical expenses. She argues that she presented unrefuted evidence that her plastic surgeon has recommended that she undergo scar revision surgery. She maintains that the evidence established that the cost of the surgery is approximately $3,550, and her health insurer has refused to cover it because the surgery is considered "cosmetic."

A tort victim may recover past and future medical expenses caused by tortious conduct. La. C.C. art. 2315; *Menard v. Lafayette Ins. Co.*, 2009-1869 (La. 3/16/10), 31 So. 3d 996; *Berry v. Anco Insulations*, 52,671 (La. App. 2 Cir. 5/22/19), 273 So. 3d 595. A plaintiff shows the probability of future medical expenses with supporting medical testimony and estimations of their probable cost. *Menard*, *supra*; *Berry*, *supra*. Awards of damages for future medical expenses generally do not involve determining amounts, but turn on questions of credibility and inferences, such as which party's experts and other witnesses the jury believes. *Id.*; *Shephard v. AIX Energy Inc.*, 51,965 (La. App. 2 Cir. 5/23/18), 249 So. 3d 194, *writ denied*, 2018-1266 (La. 11/5/18), 255 So. 3d 1050. Future medical expenses must be established with some degree of certainty. However, when the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the

17

court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required. *Berry*, *supra*; *Cooley v. Adgate*, 52,000 (La. App. 2 Cir. 5/30/18), 248 So.3d 753.

An assessment of quantum, as a finding of fact, is entitled to great deference on review. La. C.C. art. 2324.1; *Menard*, *supra*; *Berry*, *supra*. The standard of review is manifest error: an appellate court will reverse only if there is no reasonable factual basis for the trial court's conclusion, and the finding must be clearly wrong. *Menard*, *supra*; *Berry*, *supra*.

In the instant case, Sushma testified that she has visible scarring on her right leg, and she needs plastic surgery to remove the scarring. She introduced into evidence an itemized statement from Dr. Timothy Mickel, a plastic surgeon, which estimated that the surgery to remove the scar would cost approximately $3,550. However, Dr. Mickel did not testify at trial, was not deposed, and did not provide a medical report.

Further, the jury was presented with conflicting evidence with regard to the existence of scarring. In 2016, approximately one year after the incident, Dr. Bulloch documented that he observed scarring and discoloration on Sushma's leg. However, Dr. Brown, who also treated Sushma in 2016, noted that he did not observe any visible scarring. Further, in Dr. Brown's deposition, he unequivocally stated that he did not observe any scarring around the injury. Furthermore, the plaintiff did not introduce into evidence any current photographs of her leg, which may have depicted the existence of any visible scarring. Based on this record, we cannot say that the jury was clearly wrong in failing to award damages for future medical expenses.

18

*Damages – Loss of Consortium*

The plaintiffs contend the jury erred in failing to award damages to Deelip for loss of consortium. According to the plaintiffs, the failure to do so constituted an abuse of discretion.

La. C.C. art. 2315(B) authorizes the recovery of monetary damages for loss of consortium, service, and society by the spouse and children of an injured person. Damages for loss of consortium are general damages; the assessment of which the fact finder is given much discretion. La. C.C. art. 2324.1; *Jones*, *supra*; *Brammer v. Bossier Par. Sch. Bd.*, 50,220 (La. App. 2 Cir. 11/25/15), 183 So. 3d 606. In general, a claim for loss of consortium has seven elements: (1) loss of love and affection, (2) loss of society and companionship, (3) impairment of sexual relations, (4) loss of performance of material services, (5) loss of financial support, (6) loss of aid and assistance, and (7) loss of fidelity. To be compensable, it is not necessary for a claim for loss of consortium to include damages from each type of loss. *Jones*, *supra*; *Smith v. Escalon*, 48,129 (La. App. 2 Cir. 6/26/13), 117 So. 3d 576. Proof of any one of these elements is sufficient to support a damage award of loss of consortium. *Id*.

In *Allgood v. Bordelon*, 2015-504 (La. App. 3 Cir. 12/9/15), 185 So. 3d 26, *on reh'g* (2/2416), *writ denied*, 2016-0440 (La. 4/22/16), 191 So. 3d 1043, the plaintiff was injured in an altercation with the defendant, and the jury failed to award his wife damages for loss of consortium. The appellate court found that the jury erred in failing to award damages for loss of consortium and awarded her $10,000.

In *Melancon v. Lafayette Ins. Co.*, 2005-762 (La. App. 3 Cir. 3/29/06),

926 So. 2d 693, 709, *writ denied*, 2006-0974 (La. 6/16/06), 929 So. 2d 1291, and *writ denied*, 2006-1006 (La. 6/16/06), 929 So. 2d 1293, the plaintiff fell from his delivery truck after another driver struck the truck with his automobile. The plaintiff's wife testified with regard to activities she and her husband did before the accident that they could no longer do. She also acknowledged that the plaintiff's injuries had affected their sexual intimacy. The court of appeal found no manifest error in the jury's award of $10,000 for loss of consortium.

In *Hebert v. Old Republic Ins. Co.*, 2001-355 (La. App. 5 Cir. 1/29/02), 807 So. 2d 1114, the plaintiff was injured in an automobile accident. He suffered soft tissue injuries and recurring headaches. The plaintiff testified that one of the side effects of his pain medication was loss of sexual function. He and his wife testified that their lives had changed since the accident, and they were "not as intimate" as they had once been. The Court affirmed the jury's award of $60,000 in damages for loss of consortium.

In the instant case, Sushma testified that during her recovery, Deelip assumed the duties of the household and cared for their children. She also testified that her injuries affected her ability to be intimate with Deelip. According to Sushma, prior to the attack, she and Deelip engaged in sexual intercourse 15-16 times a month; after the attack, the frequency decreased to "hardly once or twice" a month.

Deelip testified Sushma continued to experience severe pain in her legs. He stated that she is no longer able to do yardwork and cook large meals. He also testified that the dog bites have negatively affected the sexual relationship between him and Sushma. He stated:

So even [if I] accidently, put my foot on her right foot, she kind of screams in pain. So and for [the] first three, four months, she had so much of swelling there that no good husband would try to touch her [and] the intimacy level has gone very down. I mean, we used to have like fifteen, sixteen that we would be intimate, now we hardly like one, two days, and for first few months, we hardly had any intimacy after the injury.

Based on the testimony adduced at trial, we find that the record was sufficient to establish that the dog attack affected Sushma's ability to perform typical household duties and yard work, which necessitated Deelip performing those duties. The evidence also established that the injuries and resulting pain had a negative impact on the couple's sexual relationship. Therefore, we find that the jury was clearly wrong in rejecting Deelip's claim for loss of consortium. Consequently, we hereby amend the trial court's judgment to award to the plaintiff, Deelip Kshirsagar, $5,000 in damages for past and future loss of consortium.[2]

*Taxation of Costs*

The defendants contend the trial court erred in denying their motion to tax costs and in granting the plaintiffs' motion. The defendants argue that they were the "prevailing party"; therefore, court costs should have been assessed to the plaintiffs.

La. C.C.P. art. 1920 provides:

Unless the judgment provides otherwise, costs shall be paid by the party cast, and may be taxed by a rule to show cause.

---

[2] The plaintiffs also appealed the trial court's denial of their motion for JNOV, new trial, and/or additur, arguing that the motion should have been granted based on the jury's "inadequate" award of damages. Because we have amended the judgment by increasing the amount of general damages awarded to the plaintiff and to award damages for loss of consortium to the plaintiff's husband, we decline to address the trial court's denial of the plaintiff's motion.

Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.

The trial court thus has great discretion in determining and allocating court costs. *Cajun Elec. Power Coop. v. Owens-Corning Fiberglass Corp.*, 616 So.2d 645 (La. 1993); *Hunter v. Bossier Med. Ctr.*, 31,026 (La. App. 2 Cir. 9/25/98), 718 So. 2d 636.

In the instant case, in denying the defendants' motion to assess costs to the plaintiffs, the trial court stated, in pertinent part:

Although the award of damages was minimal compared to the amount sought by the Plaintiffs, legal fault was assessed against the Defendants and the Jury found resulting damages for which compensation was due and awarded. The fact that one basis for liability was rejected by the Jury and that the damage award was far less than the Plaintiffs wanted does not change the fact that the Defendants were found liable and found to have caused the damage to the Plaintiffs in such that the Court is convinced the Plaintiffs are the "prevailing" Party under our law and entitled to an allocation of costs in their favor.[3]

We agree. The jury found that the defendants were negligent and awarded damages exceeding $31,000. Although the plaintiffs were not awarded the amount in damages they were seeking, the jury found that the defendants were negligent. There is nothing in this record to support the defendants' contention that they were the "prevailing party." Therefore, we find that the trial court did not abuse its great discretion in allocating costs to the defendants.

---

[3] It is a significant consideration in making this ruling that no comparative fault exists in this case. Mrs. Kshirsagar was injured through no fault of her own and it strikes the Court as inequitable that she be cast for any costs in this proceeding.

[Footnote in original].

22

**CONCLUSION**

For the reasons stated herein, we hereby amend the trial court judgment to increase the amount awarded for general damages to $45,000. The plaintiff, Deelip Kshirsagar, is hereby awarded $5,000 for loss of consortium. We affirm the judgment of the trial court in all other respects. All costs of this appeal are assessed to the defendants, State Farm Insurance Company, Carol Perez, and Daniel G. Perez, Jr.

**AMENDED AND AS AMENDED, AFFIRMED**.